UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CHARLES O. BURNS                        CIVIL ACTION NO. 13-cv-0224

VERSUS                                  JUDGE WALTER

BURL CAIN                               MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Charles O. Burns ("Petitioner") of one count of simple burglary and two counts of attempted simple burglary. He was adjudicated a third-felony habitual offender and given an enhanced sentence of life without benefits. Tr. 812-14. The convictions were affirmed on appeal. State v. Burns, 32 So.3d 261 (La. App. 2d Cir. 2010). Petitioner did not seek review of that decision in the Supreme Court of Louisiana. He did later seek relief through the state post-conviction process.

Petitioner then filed this federal habeas corpus petition and asked for relief from his convictions on the grounds that (1) the state court denied him the right to exhaust claims presented in a supplemental post-conviction application, (2) the prosecution withheld evidence, and (3) he received ineffective assistance of counsel. For the reasons that follow, it is recommended the petition be denied.

**Background Facts**

Just after midnight on September 7, 2007, the manager of a Valero convenience store on Jewella Avenue in Shreveport was notified that the store had been burglarized. She went to the store and saw that the window had been broken and a tray of cigarettes had been taken. She covered the window with plywood and left. Video surveillance tapes showed a red or maroon Ford Escort drive up to the store, and glass was heard shattering. A black male with a dark cloth or T-shirt tied over his face was seen entering the store, removing a tray of cigarettes from behind the counter, and leaving with the tray.

About 4:10 a.m. that same date, the manager of a Valero station on West 70th Street received a call of an incident at her store. She found that an outer pane of glass was broken, but an inner bullet-proof glass remained intact. No entry had been made. Surveillance video showed a red/maroon Ford Escort and a man wearing the same clothing as the burglar from the Jewella location.

About 10 minutes later, the manager of the Jewella Avenue store was alerted to yet another burglary. Surveillance video of this third incident again showed a red/maroon Ford Escort drive up, and a man matching the same description entered the store and grabbed another tray of cigarettes.

Shreveport police issued an alert for the red/maroon Ford Escort, and a deputy city marshal spotted such a car about four hours later. He tried to stop the car with lights and siren, but a low-speed chase ensued that ended at Petitioner's mother's home. Petitioner

refused orders to get out of the car, and when a deputy approached the driver's side of the car, Petitioner put his hands on the deputy's gun. Petitioner was sprayed with mace, but he continued to struggle as officers tried to handcuff him. One deputy struck Petitioner three or four times between the shoulder blades and eventually gained control. At the time of arrest, Petitioner was wearing clothes that appeared to be the same as those worn by the burglar in the surveillance recordings.

Video of the chase showed Petitioner maneuver around a deputy's car that had parked in front of him at a red light. It also showed that Petitioner threw an object out the window. An officer recovered the item, and it was identified as the cloth that Petitioner wore over his face during the burglaries. An investigator conducted a recorded interview with Petitioner three days after the arrest. Petitioner did not deny committing the crimes, and he talked about trying to "make a deal." When the investigator told Petitioner that he might have left fingerprints at the stores, Petitioner asked, "[W]here I went the first time and then came back?" He admitted being at the store and was positive he did not touch anything the first time, and he did not remember touching anything at the return visit. A search of the Escort recovered pieces of broken glass.

**Erroneous Handling of Supplemental Post-Conviction Application**

    **A. Post-conviction Procedural History**

Petitioner filed a state post-conviction application in September 2010 and argued that counsel was ineffective for not testing alleged blood evidence left at the scene by the burglar

and not pursuing an alleged plea offer. Tr. 816-30. Petitioner simultaneously filed a motion that asked the district court to provide him with a copy of the entire record and all evidence. in his case. Tr. 838-39. The State soon filed a response to the application. Tr. 841.

The post-conviction application was the first step in a complicated series of orders and applications at all levels of the state courts. Petitioner filed a motion to correct illegal sentence at about the same time, and its related filings sometimes intertwine with and further complicate things. With the aid of the parties' briefs and the record, the court has been able to put together the following history of the state court proceedings that are relevant to Petitioner's claims in this federal matter.

About five months after Petitioner filed his post-conviction application, he filed a motion that stated that he wanted to present additional claims but needed transcripts and other legal documents. He asked the court to stay his original application and allow him 30 additional days to file a supplement. Tr. 856-57. The trial court issued an order that allowed Petitioner 30 days from the March 29, 2011 order to file a supplement to the post-conviction application. The order also directed the clerk of court to provide Petitioner with a "copy of his guilty plea transcript." Tr. 868. Petitioner responded with a "Motion to Inform the District Judge" in which he stated that there was no guilty plea transcript. Rather, there was a jury trial transcript that Petitioner wanted. Tr. 871-74. The trial court did not act on this motion right away.

About two weeks later, Petitioner filed with the appellate court a request for writ of mandamus to the trial court. Petitioner complained that he had been waiting for a ruling on his original application and a copy of the transcript. Tr. 881-82. The appellate court responded by directing the trial court to act on the post-conviction application within 30 days, and it afforded the trial court an opportunity to consider the motion to inform regarding the trial transcript. Tr. 893.

Judge Ramona Emanuel soon issued a written opinion that denied the post-conviction application on the merits. She stated that Petitioner failed to provide any evidence that blood was left at the scene of any of the crimes or evidence concerning communication about an alleged plea deal. The judge noted that she had granted Petitioner 30 days to file a supplemental application, but that time had run without any filing being received. She denied the request for a copy of the trial transcript because Petitioner had not stated a particularized need. Tr. 894-96.

The trial judge's opinion was filed May 25, 2011. A few weeks later, on July 7, 2011, the clerk of court file stamped a supplemental post-conviction application. The supplement was signed but not dated. Petitioner contends that he actually tendered the supplement to prison officials for mailing as early as April 24, 2011, and he has submitted mail room records that appear to lend support to this contention. (It is interesting that the signature page on the copy of the supplement in the state court record filed by the State does not bear a date beside the signature. Tr. 916. But a copy submitted by Petitioner in an effort to show the

tender was timely has the date April 24, 2011 written beneath the signature block. Doc. 8, Ex. 1, pg. 21.) The supplement included new grounds for ineffective assistance of counsel and an assertion the State did not disclose exculpatory material.

Petitioner filed an application for writ of mandamus with the appellate court and complained, among other things, that the trial court had erroneously denied his supplemental application as untimely. Petitioner argued that the supplement was timely because it was considered filed when he placed it in the hands of prison officials for mailing. He cited the mailbox rule that Louisiana courts apply to pro se post-conviction filings. He asked the appellate court to stay any ruling on his original post-conviction application and allow him the opportunity to exhaust his erroneously denied supplemental application. Tr. 958-62. The appellate court responded by transferring the matter to the trial court to act on the supplemental application that was allegedly filed in April 2011. Tr. 1035. Judge Emanuel denied the supplemental application as untimely because the deadline to file it ran on April 29, 2011 and it was not filed until July 7, 2011. She did not address the mailbox rule. Tr. 1040-41.

Petitioner soon filed another application for mandamus. He argued that the trial judge had been wrong to deem his supplemental application untimely. He asked the appellate court to grant the relief requested in his original and supplemental applications or issue an order that he be allowed to exhaust his claims before the trial judge. Tr. 1053-57. The appellate court first denied relief because Petitioner did not attach a copy of his supplemental

application to his request for review and because the application failed to demonstrate that the trial court erred in denying the application. Tr. 1077. Petitioner filed an application for writ of mandamus in the Supreme Court of Louisiana. He argued that the lower courts had violated his right to seek judicial review under the state constitution by "constantly denying the petitioner access to exhaust its claim." Tr. 1046. The writ was denied. Tr. 1079.

Petitioner then filed another application for writ of review with the state appellate court. He recited the procedural history of the case and asserted that he was seeking review of the trial court's denial of his *original* post-conviction application. Tr. 1081, 1085. He did not argue the merits of his supplemental claims. The appellate court issued a short decision that said it found "no palpable error in the trial court's conclusion that the defendant failed to meet his burden of proof" under Strickland. Tr. 1123. Petitioner filed an application for writ of certiorari in the Supreme Court of Louisiana and again sought review only with respect to the claims presented in his *original* application. Tr. 1125-1129. The writ was denied without commit. Tr. 1140. Thus, Petitioner never properly presented the merits of his supplemental claims at all levels of the state court system.

### B. Habeas Claim

Petitioner's memorandum with this court argues that the state courts were wrong to not apply the mailbox rule to deem his supplemental application timely. He asserts that he has evidence he timely tendered the supplement to prison officials and that the state courts were wrong to ignore it. He argues that the state courts violated his due process right to

access the courts and exhaust the claims in his supplemental application. He asks this court to require the state trial court to consider the supplemental application and hold an evidentiary hearing in accordance with state post-conviction rules.

The habeas statute provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011). For this reason, a claim that the state courts misapplied their own post-conviction rules and procedures do not state a habeas claim. It is well settled that "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001).

An example is found in Kinsel v. Cain, 647 F.3d 265, 273 (5th Cir. 2011), where the Court held that the "no state habeas infirmities" rule barred habeas review of a claim that a Louisiana appellate court violated due process during post-conviction proceedings. The Kinsel decision said that it was "beyond regrettable that a possibly innocent man will not receive a new trial," but the federal court's hands were tied by an inability to review whether a state court's misapplication of its own procedural law deprived the petitioner of due process during his post-conviction proceedings. See also Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999).

The mailbox rule that Petitioner claims was misapplied by the state courts is a creature of Louisiana, not federal, law. The rule has its genesis in Houston v. Lack, 108 S.Ct. 2379 (1988), but it is not of a constitutional magnitude or mandated on the state courts. The Houston court was interpreting federal procedural rules. Some state courts, such as Louisiana, have incorporated the prison mailbox rule as part of their procedure. But other states, such as Texas, have refused to extend the rule to state habeas filings. Causey v. Cain, 450 F.3d 601, 603-05 (5th Cir. 2006). This court honors Louisiana's application of the mailbox rule when determining the tolling effect of state habeas applications on the federal period of limitations, but the federal court has no authority to correct perceived errors of the state courts in their application of that rule. Habeas relief is not available on this claim.

**Brady Claim**

After Petitioner was arrested, Detective Shannon Mack applied for a search warrant for the Ford Escort and the home where Petitioner lived. The scene was sealed as police awaited the warrant. Detective Mack's application recounted the crimes and that video surveillance showed a suspect driving a "mid-90's maroon 4-door Ford Escort with a scoop in the trunk as well as 7-spoked rims." It noted that an officer had remembered a similar string of burglaries from a year earlier, where the same car was used to commit the same types of crimes, and one burglary had been at one of the same stores. The prior crimes had ended with the arrest of Petitioner. Police learned that Petitioner had been released from prison just five days earlier, and the car used in the prior crimes, a 1995 Ford Escort, was still

registered to his mother. Tr. 25. A picture of the car was included in the affidavit application, but the view is from the rear (to show the license plate) so it does not indicate whether it is a two-door or a four-door car. Tr. 24.

Petitioner has taken the reference in the affidavit to the car being a maroon four-door and spun it into an allegation that the State must have withheld video that showed a maroon four-door car at the scene of the crime, which would be exculpatory because Petitioner drove a two-door red Escort. This claim was not presented at all levels of the state court system as required for exhaustion. It would be too late under state law to exhaust the claim now, so the claim is considered technically exhausted but subject to a procedural bar, which requires a showing of cause and prejudice to overcome. Jones v. Jones, 163 F3rd 285, 296 (5th Cir. 1998). Petitioner did not even attempt to articulate cause and prejudice for his procedural default when the car afforded him that opportunity. Docs. 7 and 8. For the reasons that follow, the claim is also plainly lacking in merit.

To establish a claim under Brady v. Maryland, 83 S.Ct. 1194 (1963) a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. Wright v. Quarterman, 470 F.3d 581, 591 (5th Cir. 2006) . Evidence is not "suppressed" if the petitioner either knew or should have known of the essential facts that would have permitted him to take advantage of any exculpatory evidence. West v. Johnson, 92 F.3d 1385, 1399 (5th Cir. 1996). Evidence is material if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 115

S.Ct. 1555, 1566 (1995).  In short, a petitioner must show a "reasonable probability of a different result."  Banks v. Dretke, 124 S.Ct. 1256, 1276 (2004).

There is no evidence whatsoever that the State withheld surveillance video from the defense.  The defense filed a request for discovery, and the State responded with a copy of all police reports and warrants.  The State stated its intention to introduce at trial all items of evidence referred to in the reports.  Those reports and warrant applications made repeated reference to the surveillance videos.  Tr. 10-65.  Detective Mack testified at a preliminary examination and was asked, "There was video surveillance as well?"  She answered, "All three."  Tr. 150.  The prosecutor also mentioned that the State had three CDs and would provide copies if defense counsel delivered blanks.  Tr. 151.  Defense counsel raised no objection or indication of surprise when the surveillance video was introduced at trial.  Tr. 500-01.

There is absolutely no evidence that there were any surveillance videos other than those produced to the defense and admitted at trial.  There were a couple of discrepancies in the initial written reports as to whether the suspect car was two-door or four-door, and whether its color was best described as red or maroon, but it was quite clear that all of those descriptions were of Petitioner's car, and it was the only one to appear on any surveillance video.  This claim lacks merit.

**Ineffective Assistance of Counsel**

Petitioner's third and final claim listed in his petition (Doc. 4) relates to a shoe print found at one of the crime scenes. Petitioner states that the prosecution admitted at trial that photos of the print were lost. He faults his counsel for failing to adequately challenge the shoe print evidence.

This claim was not exhausted in the state court system, and Petitioner did not attempt to show cause and prejudice to overcome the procedural bar that Petitioner would face if he returned to state court now. Docs. 7 and 8. The claim also lacks merit. To prevail on such a claim, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Officer Kelly testified that he responded to the 70th Street scene and took pictures of a footprint on one of the panes of glass. He said it was not a full print, and he could not tell what kind of tread it was. Defense counsel said he had a lot of questions about that footprint, and Officer Kelly told him he would have to get the pictures from the property room. Tr. 531-35. Detective Mack was later asked about the footprint. She said she had never seen any photos of it, and none were in evidence or in the narrative report. She was asked if she had reviewed the evidence portion of Officer Kelly's report. She said she had, but there was no indication of photos. Tr. 614-15. Defense counsel used this and other discrepancies in

the reports during his closing argument. He contended that the investigation had been botched and suggested that the footprint, if a photo had been taken and preserved, could have been used to compare prints with suspects. Tr. 649-65.

Petitioner complains in his one-paragraph argument that counsel "failed to challenge the evidence" regarding the print after the State could not produce photos. Petitioner does not explain what counsel could have done with the information other than make the arguments he did. Counsel was quite aggressive in attacking the police investigation and their methods. He suggested that at least one officer was lying and that the investigation was sloppy. There is no indication that counsel could have done any more with the footprint information that would, in the face of the strong evidence of guilt, produce a reasonable probability that the result in the trial would have been different.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel

are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of February, 2016.

_____
Mark L. Hornsby
U.S. Magistrate Judge